# Exhibit 7

# JASSY VICK CAROLAN

LOS ANGELES  SAN FRANCISCO

355 South Grand Avenue, Suite 2450 | Los Angeles, CA 90071 | T 310.870.7048 | F 310.870.7010 | JASSYVICK.COM

Jean-Paul Jassy
jpjassy@jassyvick.com

January 5, 2022

**VIA EMAIL and U.S. MAIL**

Chase A. Scolnick, Esq.
Keller/Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
cscolnick@kelleranderle.com

    Re:    *Rapp v. Fowler*, Subpoenas to Adam Vary

Dear Mr. Scolnick:

    I write in response to your December 29, 2021 letter to me concerning subpoenas directed to journalist Adam Vary in the *Rapp v. Fowler* matter. It is now clear that your intent is simply to harass Mr. Vary, likely because he wrote an article that exposed your client's conduct toward Mr. Rapp when Mr. Rapp was a minor, for which your client – at the time – expressed remorse. Your client's disdain for Mr. Vary's reporting is not an excuse to harass him and it is not a sword with which Mr. Vary's rights and privileges may be pierced.

    At all times, we have been straightforward with you about our objections to your subpoenas. Mr. Vary sat for more than seven (7) hours of deposition on December 16, 2021 notwithstanding the fact that I repeatedly advised you, including in letters dated November 18 and December 14, 2021, that any deposition of Mr. Vary should be short because he intended to invoke the Reporter's Privilege/Shield in response to any questions about his newsgathering and/or unpublished materials. Mr. Vary sat for his deposition in good faith, even though you asked question after question obviously calculated to learn about Mr. Vary's unpublished materials and newsgathering. Even then, I always (or nearly always) only objected and instructed "to the extent" your questions called for privileged/shielded material. Mr. Vary thoughtfully responded to each question by either giving information that he believed was not privileged/shielded, or withholding information because it was. And now you press on.

    It is clear that either you do not understand and/or do not respect the law of the Reporter's Privilege/Shield. I imagine you would find it offensive if someone were asking your client for information/documents that clearly sought to invade the attorney-client privilege or the attorney work product doctrine. Although our objections and prior communications have made multiple efforts to explain our position, the purpose of this letter is to respond to your December 29 letter, set forth the bases for our objections and legal positions in more detail, and put you on notice of our intent to seek a protective order and a recovery of fees if you continue to push

January 5, 2022
Page 2

forward in defiance of the law and rules, to further harass and unduly burden Mr. Vary, and try to strip him of his rights.

### *Violations of the Rules of Court and the Federal Rules of Civil Procedure*

Your entire approach to this matter demonstrates that you are not in compliance with your duty to "avoid imposing undue burden or expense on a person subject to" a subpoena. F.R.C.P. 45(d)(1). Even though you were told in advance what our positions and objections were, you insisted on making Mr. Vary sit through more than seven hours of deposition, which he patiently did, and now you want more. Aside from the substantial substantive problems with your position, which are addressed below, there are basic procedural hurdles you cannot satisfy.

As you are aware, the two subpoenas you sent to me on December 6, 2021 were both issued out of the U.S. District Court for the Central District of California. Federal Rule of Civil Procedure 45(a)(2) requires that subpoenas must issue from the district where the action is pending, which, in this instance, is the U.S. District Court for the Southern District of New York. On December 17, 2021, I sent you an email asking what authority, if any, you have that you can enforce a subpoena that does not comply with F.R.C.P. 45(a)(2). Your December 29 letter supplies no such authority. Instead, it implicitly acknowledges that your two December 6 subpoenas were defective because you sent me a new subpoena duces tecum, which we will be objecting to under separate cover. Since you offer no authority to demonstrate that you can enforce the December 6 subpoenas at issue, there is no justification for continuing to threaten and harass Mr. Vary based on his responses and objections to those subpoenas.

Compliance for any and all subpoenas directed to Mr. Vary must be sought in "the district where compliance is required" – *i.e.,* in the U.S. District Court for the Central District of California. F.R.C.P. 45(d)(2)(B)(i). To be clear, Mr. Vary does **not** consent to transferring any subpoena-related motion to the Southern District of New York, and there is no grounds or basis to do so. Because any subpoena-related motion must be litigated in the Central District of California, the Local Rules of the Central District of California apply. *See* U.S. Dist. Ct., C.D. Cal., L.R. 45-1(b). As I reminded you on December 17, under Local Rule 37-1 you were required to "identify each issue and/or discovery request in dispute, state briefly as to *each* such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought." Your December 29 letter did not state your position as to "each" issue or request. Your letter provided almost no legal authority, not even on the issues where I specifically asked you on December 17 for your authority, if you had any.

Furthermore, I am aware that the discovery cut-off in the underlying action is January 18, 2022. You did not need to wait until the eleventh hour to conduct this discovery of Mr. Vary, and it is obviously not Mr. Vary's fault that you did. Do you have legal authority to show that you can even proceed with efforts to bring motions to compel against Mr. Vary given the discovery cut-off and the timelines set forth in Local Rules 37-2 and 37-3?

Even if there were not procedural hurdles to your position – and there certainly are, a point that we do not concede – you also cannot support the substantive aspects of your demands to Mr. Vary.

January 5, 2022
Page 3

### *The Reporter's Privilege/Shield*

As I explained in previous correspondence and at the deposition itself, to the extent you are interested in any information or records pertaining to Mr. Vary's work as a journalist, he is protected by the Reporter's Privilege/Shield. Your December 29 letter contends that Mr. Vary's communications with Mr. Rapp "before and after the late October 2017 time period cannot be covered by any purported privilege," but Mr. Vary continued to author and co-author articles about Mr. Rapp – and of course continued to work as a journalist – after October 2017. And, as I've also explained in previous correspondence and at the deposition itself, any communications that are wholly unrelated to Mr. Vary's newsgathering and reporting are entirely irrelevant, or any nominal relevance is outweighed by the burden of searching for and producing materials, if any exist, in response to your dozens of document demands to Mr. Vary.

Your December 29 letter asserts that "Mr. Vary refused to answer *any* questions that went beyond the material explicitly published in his Buzzfeed [sic] articles." (Emphasis added.) That statement is patently false. For example, you asked him irrelevant questions about BuzzFeed's financial situation and you asked him for expert-level testimony, both of which Mr. Vary answered to the best of his ability, and which "went beyond the material explicitly published in his BuzzFeed articles." But if your point is that, for those questions that related to his reporting and newsgathering, I agree that he narrowed his responses to published material – which is what I repeatedly told you, in writing, before the deposition that he would do, so that should have been no surprise to you.

Your December 29 letter also misleadingly states that "Mr. Vary's communications with Mr. Rapp's lawyers or representatives about this case cannot be protected or withheld." Mr. Vary answered all of your deposition questions about his limited communications with Mr. Rapp's lawyers, and he testified under oath that he had no written communications with Mr. Rapp's lawyers, which I had also already told you in writing before the deposition began.

Your December 29 letter contains other inaccuracies. For example, contrary to your contention, Mr. Vary did not refuse to answer questions "about his communications with Mr. Rapp or about his allegations," nor did he refuse "to respond to questions about what Mr. Rapp told him." Rather, Mr. Vary limited his responses to published information because that is precisely what the Reporter's Privilege/Shield entitles him to do. You assert that Mr. Vary should have responded to your satisfaction about his unpublished information concerning the "manner, conduct, and circumstances into Mr. Rapp's allegations," but you cite no authority for the proposition that such unpublished information is discoverable. You make a passing reference to one Ninth Circuit case, but you make no effort to actually apply that case to any deposition questions or lines of questions in this case. The burden is on you to do that, and you failed. You completely ignore the *absolute* privilege under California law afforded to a subpoenaed journalist, which applies in a civil case pending in federal court under diversity jurisdiction. All of these authorities were shared with you previously, including in our objections served before the deposition.

As discussed in more detail below, there are three legal doctrines that protect Mr. Vary and his work here: the California Reporter's Shield Law, which provides absolute protection

January 5, 2022
Page 4

from disclosure in a civil case founded on diversity jurisdiction; the Ninth Circuit's First Amendment-based privilege; and the common law. Your December 29 letter does not explain how you can overcome the protections afforded by *any* of these doctrines, and does not even mention two of them. On December 17, I asked you to send me a letter in compliance with Local Rule 37-1 explaining your "purported ability to overcome the Reporter's Privilege/Shield as referenced in our objections." Your letter, which arrived 12 days later, failed to do that.[1]

### Mr. Vary Invokes California's Robust Reporter's Shield Law

The federal court in this case will look to California law in analyzing Mr. Vary's asserted privilege claim and immunity from contempt. *See Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 91-92 (S.D. Cal. 1987) (in diversity case pending in Massachusetts, the court applied California privilege law where witness was in California, deposition was to occur in California, federal court in California was called upon to determine privilege issue and California had an interest in applying its law); *see also Wolpin v. Phillip Morris, Inc.*, 189 F.R.D. 418, 423 (C.D. Cal. 1999) (federal courts apply law of state where discovery dispute occurs).

In California, journalists are protected from having to disclose confidential sources and unpublished, non-confidential information as codified in the California Constitution, Art. 1, § 2(b) and California Evidence Code § 1070(a) (collectively, "California's Shield Law"). California's Shield Law protects journalists from having to "disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." Cal. Const., art. I, § 2(b) (emphasis added). Under California's Shield Law, "unpublished information," which is protected from disclosure in the face of a subpoena, includes *any* "information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all … data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated." *Id.*

California's Shield Law applies absolutely in civil cases, providing an "absolute immunity" from contempt in civil cases, and "'*absolute* protection to nonparty journalists in civil litigation from being compelled to disclose unpublished information[.]'" *New York Times Co. v. Superior Court*, 51 Cal. 3d 453, 456-57, 461-462 (1990) (emphasis added; quoting decision from Court of Appeal, which the Supreme Court affirmed); *see also McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 119-120 (2007) ("the Shield Law confers an absolute immunity against compelled disclosure of the protected information and, although that immunity must occasionally

---

[1] I sincerely appreciate that you did not send me a letter between December 18-22, 2021 while I was on vacation, but you could have sent your letter on December 23 (before the court holidays) or December 27 or 28 (immediately after the court holidays). Instead, you chose to wait until December 29, 2021, and I am responding accordingly. Also, I note that you originally wanted discuss these matters on December 17, but, as I pointed out that same day, your brief email requesting to do so did not comply with Local Rule 37-1.

January 5, 2022
Page 5

yield when it threatens to frustrate the competing federal constitutional right of a criminal defendant to a fair trial, there is no analogous competing right of a civil litigant that will suffice to overcome the immunity"). "Since contempt is generally the only effective remedy against a non-party witness, the California [Shield Law] grant[s] such witnesses virtually absolute protection" in civil cases. *Mitchell v. Superior Court*, 37 Cal. 3d 268, 274 (1984); *In re Willon*, 47 Cal. App. 4th 1080, 1091 (1996) (same).

Article 1, Section 2(b) of the California Constitution was enacted in 1980 by an overwhelming majority of California voters. By elevating the protection from a statute – Evidence Code § 1070 – to the state constitution, the California electorate demonstrated their belief in the need to give journalists the maximum possible shield for information obtained in their newsgathering activities. Recognizing this mandate, the Court of Appeal observed in *Playboy Enterprises, Inc. v. Superior Court*, 154 Cal. App. 3d 14, 27-28 (1984), that the interests of the press are favored over having civil actions determined on a full record:

> The elevation to constitutional status must be viewed as an intention to favor the interest of the press in confidentiality over the general and fundamental interest of the state in having civil actions determined upon a full development of material facts. . . . It has long been acknowledged that our state Constitution is the highest expression of the will of the people acting in their sovereign capacity as to matters of state law.

As the California Supreme Court explained in *Delaney v. Superior Court*, 50 Cal. 3d 785 (1990), the Shield Law applies to *any* unpublished information, even if it is not confidential:

> [Article 1, Section 2(b)] states plainly that a newsperson shall not be adjudged in contempt for 'refusing to disclose any unpublished information'. . . . The use of the word 'any' makes clear that article I, section 2(b) applies to all information, regardless of whether it was obtained in confidence. Words used in a constitutional provision 'should be given the meaning they bear in ordinary use.' . . . In the context of article I, section 2(b), the word 'any' means without limit and no matter what kind.

*Id.* at 798; *see also New York Times*, 51 Cal. 3d at 461-62 (unpublished photographs of a public event are protected by California's Shield Law); *Miller v. Superior Court*, 21 Cal. 4th 883, 897 (1999) ("the shield law applies to unpublished information whether confidential or not").

Where, as here, the material is sought by a civil litigant, there is no federal or state constitutional right that can be weighed against Mr. Vary's rights under the California Constitution. As the court noted in *Playboy*: "[c]ivil litigants do not have a constitutional right to unrestricted discovery of relevant information." 154 Cal. App. 3d at 25; *see also McGarry*, 154 Cal. App. 4th at 119-120 (same). Thus, in civil litigation, no balancing of opposing interests is appropriate because the California Shield Law absolutely protects information from disclosure. *Id.; New York Times*, 51 Cal. 3d at 462 (a civil litigant has no federal or state constitutional rights which are sufficient to overcome rights under California Shield Law).

January 5, 2022
Page 6

In *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 489, 495 (C.D. Cal. 1981), the federal court granted journalists' motions to quash subpoenas for their depositions and newsgathering materials, relying in part on California's Shield Law, which, the court held, "'reflects a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment.'" *Id.* (quoting *Baker v. F&F Investment*, 470 F.2d 778, 782 (2d Cir. 1972)).

Under California's Shield Law, Mr. Vary has an absolute constitutional right not to disclose the requested information and your client has no competing constitutional right that could overcome Mr. Vary's rights. Thus, Mr. Vary cannot be compelled to disclose any unpublished or source information despite your unfounded insistence to the contrary.

### The Ninth Circuit Recognizes A Qualified First Amendment Privilege, Which Also Applies Here

Nearly a half century ago, the United States Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972), expressly recognized that newsgathering activities qualify for First Amendment protection: "Without some protection for seeking out the news, freedom of the press could be eviscerated." *Id.* The Ninth Circuit has held that *Branzburg* established a constitutionally-based qualified privilege for journalists to resist the disclosure of information gathered or obtained during the course of newsgathering activities: "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" *Shoen v. Shoen ("Shoen I")*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal citations omitted); *see also U.S. v. Pretzinger*, 542 F.2d 517, 520-521 (9th Cir. 1976) (affirming decision not to compel reporter to disclose source in criminal case, holding that, "district judge must balance the interest of confidentiality of news sources against the needs of the criminal justice system to know the identity of the source"). In holding that the qualified privilege attached to subpoenaed, unpublished, non-confidential information obtained by a book author, the Ninth Circuit stated: "the journalist's privilege recognized in *Branzburg* [is] a partial First Amendment shield that protects journalists against compelled disclosure in all judicial proceedings, civil and criminal alike." *Shoen I*, 5 F.3d at 1292. This privilege reflects "the preferred position of the First Amendment and the importance of a vigorous press." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981).

The Ninth Circuit holds that the privilege applies broadly to protect both confidential and non-confidential material and information. *Shoen I*, 5 F.3d at 1295; *Shoen v. Shoen ("Shoen II")*, 48 F.3d 412, 414 (9th Cir. 1995). Disclosure of confidential information or non-confidential unpublished information may be compelled "only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 416. *Shoen II* also requires that the party seeking to overcome the privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." *Id.* Your December 29

January 5, 2022
Page 7

letter makes a passing reference to these standards, but fails to show how you can satisfy your burden with respect to *any* deposition questions or *any* requests for production.

### Mr. Vary Also Relies On The Common Law

While the Ninth Circuit has recognized the qualified privilege as constitutionally based, federal common law independently supports a journalist's privilege. This privilege arises under Federal Rule of Evidence Rule 501, which was adopted after *Branzburg* and provides in relevant part that "privilege(s) … shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. The House Report accompanying the 1975 adoption of Rule 501 explained that the federal common law of privileges is "to be developed by the courts of the United States under a uniform standard applicable both in civil and criminal cases." Fed. R. Evid. 501, Adv. Comm. Note, H.R. No. 93-650 (1974).

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the United States Supreme Court established the framework for evaluating privileges under the federal common law. As a guide to interpreting Rule 501, the Court referred to the "oft-repeated observation that 'the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions.'" *Id.* at 8.[2] The Second Circuit held that, "[a]bsent a federal statute to provide specific instructions, courts which must attempt to divine the contours of non-statutory federal law governing the compelled disclosure of confidential journalistic sources must rely on both judicial precedent and well informed judgment as to the proper federal public policy to be followed in each case." *Baker*, 470 F.2d at 781. For example, in *Los Angeles Memorial Coliseum Comm'n*, 89 F.R.D. at 492, a federal court in California recognized the well-established qualified federal common law privilege and applied the privilege in a civil case covering journalists' confidential sources and non-confidential work product.

Courts repeatedly have recognized that subpoenas to non-party journalists pose a pernicious threat to freedom of the press. Indeed, "news gathering is *essential* to a free press":

> 'The press was protected so that it could bare the secrets of government and inform the people.' Without an unfettered press,

---

[2] The legislative history of Rule 501 – dating back more than forty years – anticipated that the law of privilege would evolve to recognize a journalist's privilege. For example, Representative Hungate, Chair of the House Judiciary Subcommittee on Criminal Justice and principal draftsman of Rule 501, believed that the rule "permits the courts to develop a privilege for newspaperpeople on a case-by-case basis," and made clear that "[t]he language cannot be interpreted as a congressional expression in favor of having no such privilege, nor can the conference action be interpreted as denying to newspaperpeople any protection they may have from State newsperson's privilege laws." 120 Cong. Rec. H12253-54 (daily ed. Dec. 18, 1974). See also *Riley v. Chester*, 612 F.2d 708, 714 (3d Cir. 1979) (legislative history of Rule 501 "manifests that its flexible language was designed to encompass, *inter alia*, a reporter's privilege not to disclose a source").

January 5, 2022
Page 8

> citizens would be far less able to make informed political, social, and economic choices. But the press' function as a vital source of information is weakened *whenever the ability of journalists to gather news is impaired.*

*Zerilli*, 656 F.2d at 711 (emphasis added) (quoting *New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring)).

These public policy concerns apply to the compelled disclosure of underlying resource materials, which is precisely the type of material you seek here. *Shoen II*, 48 F.3d at 416; *Shoen I*, 5 F.3d at 1294-95 (identifying a number of harms, including the risk of appearing as a "research tool" of the government or private parties); *United States v. La Rouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988) ("We discern a lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled"). This is due in part to the fact that "court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1999). The Ninth Circuit has also recognized the substantial burden that compliance with subpoenas can impose on reporters, noting that the "frequency of subpoenas would not only preempt the otherwise productive time of journalist and other employees but measurably increase expenditures for legal fees." *Shoen I*, 5 F.3d at 1295 (citation omitted).

The Ninth Circuit directs federal district courts to look to state law for guidance when the State has directly addressed the issue. *Gorenc v. Salt River Project Agric. Improvement & Power District*, 869 F.2d 503, 505 (9th Cir. 1989); *see also Jaffee*, 518 U.S. at 12-13 (same). There is widespread consensus among the States regarding the existence and value of a journalist's privilege. Forty states (including California), as well as the District of Columbia, have codified the reporter's privilege.[3] Courts in nine additional states have recognized the

---

[3] *See* Ala. Code § 12-21-142; Alaska Stat. §§ 09.25.300, *et seq.*; Ariz. Rev. Stat. Ann. §§ 12-2214, 12-2237; Ark. Code Ann. § 16-85-510; Cal. Const. art. I, § 2(b); Cal. Evid. Code § 1070; Colo. Rev. Stat. §§ 13-90-119, 24-72.5-101, *et seq.*; Conn. Gen. Stat. Ann. § 52-146t; Del. Code. Ann. tit. 10, §§ 4320, *et seq.*; D.C. Code Ann. §§ 16-4702-4704; Fla. Stat. Ann. § 90.5015; Ga. Code Ann. § 24-5-508; 735 Ill. Comp. Stat. 5/8-901, *et seq.*; Ind. Code § 34-46-4-1, 34-46-4-2; Kan. Stat. Ann. §§ 60-480, *et seq.*; Ky. Rev. Stat. Ann. § 421.100; La. Rev. Stat. Ann. §§ 45:1451-59; 16 Me. Rev. Stat. Ann. § 61; Md. Code Ann. Cts. & Jud. Proc. § 9-112; Mich. Comp. Laws § 767.5a; Minn. Stat. §§ 595.021, *et seq.*; Mont. Code Ann. §§ 26-1-901, *et seq.*; Neb. Rev. Stat. §§ 20-144, *et seq.*; Nev. Rev. Stat. Ann. § 49.275, 49.385; N.J. Stat. Ann. §§ 2A:84A21, *et seq.*; N.M. Stat. Ann. § 38-6-7; N.Y. Civ. Rights Law § 79-h; N.C. Gen. Stat. § 8-53.11; N.D. Cent. Code § 31-01-06.2; Ohio Rev. Code. Ann. §§ 2739.04, 2739.12; Okla. Stat. Ann. tit. 12, § 2506; Or. Rev. Stat. §§ 44.510, *et seq.*; 42 Pa. Cons. Stat. Ann. § 5942; R.I. Gen. Laws §§ 9-19.1-1, *et seq.*; S.C. Code Ann. § 19-11-100; S.D. HB 1074 (signed Mar. 5, 2019); Tenn. Code Ann. § 24-1-208; Tex. Civ. Proc. & Rem. Code §§ 22.021 *et seq.*; Tex. Code of Crim. Proc. Act 38.11 & 38.111; Utah Rule of Evid. 509; Wash. Rev. Code § 5.68.010; W. Va. Code § 57-3-10; Wis. Stat. Ann. § 885.14.

January 5, 2022
Page 9

journalist's privilege in at least some context in case law.[4]  Wyoming is the only State that has not weighed in.

The federal common law, as well as an examination of state law, makes clear that the reporter's privilege is in the public interest, it is robust, and your client's overbroad subpoena in this case cannot overcome that privilege.

### *Privilege Log*

Your December 29 letter incorrectly states that Mr. Vary "broadly claimed all documents in his possession are protected[.]"  On December 16, before Mr. Vary's deposition started, I sent you an email stating, in part: "Our position is that all of Defendant's requests for production call for material protected from disclosure by, among other things, the Reporter's Privilege/Shield.  Indeed, some do expressly and directly, such as RFP Nos. 28 and 29.  Without conceding that any documents Mr. Vary may have are relevant to this case, Mr. Vary's only potentially relevant connection to this case is in his capacity as a journalist and any documents he may have pertaining to the matter (such as notes, drafts, communications with sources and editors, etc.) were gathered and/or generated in the course of newsgathering, and are therefore protected from disclosure by the Reporter's Privilege/Shield.  Any documents that are not protected by the Reporter's Privilege/Shield would not be relevant."  We stand by that position.

I have repeatedly described how and what is privileged here.  You still want more information.  During the deposition and after the deposition, in my December 17 email to you, I asked you to provide what legal authority you have, if any, "[r]equiring a non-party to produce a privilege log."  Despite my requests, you provided no such authority, and yet you continue to insist on a detailed privilege log.

Mr. Vary declines to produce a privilege log because he is categorically refusing to produce unpublished and newsgathering materials, and he should not be required to comb

---

[4] *See Belanger v. City and County of Honolulu*, Civ. No. 93-4047-10 (Haw. 1st Cir. Ct. May 4, 1994) (unpublished) (civil); *Idaho v. Salsbury*, 924 P.2d 208 (Idaho 1996) (criminal); *In re Wright*, 700 P.2d 40 (Idaho 1985) (criminal); *Winegard v. Oxberger*, 258 N.W.2d 847 (Iowa 1977) (civil); *In re John Doe Grand Jury Investigation*, 574 N.E.2d 373 (Mass. 1991) (grand jury); *Sinnott v. Boston Retirement Board*, 524 N.E.2d 100 (Mass. 1988) (civil); *Ayash v. Dana-Farber Cancer Institute*, 822 N.E.2d 667 (Mass. 2005) (civil); *Eason v. Federal Broad. Co.*, 697 So. 2d 435, 437 (Miss. 1997); *Hawkins v. Williams*, No. 29,054 (Miss. Cir. Ct. Hinds Co. Mar. 16, 1983) (unpublished opinion) (based on Miss. Const.); *Pope v. Village Apartments, Ltd.*, No. 92-71-436 CV (Miss. 1st Cir. Ct. Jan. 23, 1995) (unpublished opinion) (Gibbs, J.) (civil); *Mississippi v. Hand*, No. CR89-49-C(T-2) (Miss. 2d Cir. Ct. July 31, 1990) (unpublished opinion) (criminal); *In re Grand Jury Subpoena*, No. 38664 (Miss. 1st Cir. Ct. Oct. 4, 1989) (unpublished opinion) (grand jury); *Missouri ex rel. Classic III, Inc.*, 954 S.W.2d 650 (Mo. Ct. App. 1997) (civil); *New Hampshire v. Siel*, 444 A.2d 499 (N.H. 1982) (criminal); *Opinion of Justices*, 373 A.2d 644 (N.H. 1977 (civil statutory proceeding); *Vermont v. St. Peter*, 315 A.2d 254 (Vt. 1974) (criminal); *Brown v. Virginia*, 204 S.E.2d 429 (Va. 1974) (criminal); *Clemente v. Clemente*, 56 Va. Cir. 530 (2001) (civil); *Philip Morris Co. v. ABC*, 36 Va. Cir. 1 (1995) (civil).

January 5, 2022
Page 10

through *years* of potentially responsive documents and communications that he would categorically withhold on privilege grounds in any event. *See, e.g., Perry v. Schwarzenegger*, 268 F.R.D. 344, 353 (N.D. Cal. 2010) (in order to reduce and eliminate unnecessary burdens on non-party, district court upheld magistrate judge's ruling that non-party did not have to create a privilege log); *Xcentric Ventures, LLC v. Borodkin*, 934 F.Supp.2d 1125, 1147 (D. Ariz. 2013) (recognizing unfairness of requiring a non-party to generate a privilege log where the underlying materials would be privileged in any event).

If you insist on moving forward with motion practice and the Court is inclined to order the preparation of a privilege log and/or a further deposition and/or the production of documents, Mr. Vary intends to ask the Court to also order your client to pay all expenses associated with such activities, including reasonable attorneys' fees. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 930809 (N.D. Cal. Mar. 9, 2017).

### Conclusion

Any documents that you seek that are even arguably relevant to this case were all generated or maintained in the course of reporting and newsgathering – including communications, drafts, notes, etc. – and are therefore all protected under the Reporter's Privilege/Shield. Any documents you seek that are not covered by the Reporter's Privilege/Shield are not relevant because they have nothing to do with Mr. Spacey, Mr. Rapp, sexual assault or any other matters at issue in your case. The only documents I can think of that do not fall into those categories are published articles, but you have already told me that you do not want or need those. If you can think of any other documents that would not fall into one of those categories, please let me know, and we can discuss. Likewise, once Mr. Vary receives a copy of the transcript of his December 16 deposition he will review his answers to determine whether any additional information can be provided without compromising the Reporter's Privilege/Shield.

If we were to assume that your December 29 letter complied with Local Rule 37-1 – which we do not concede is the case – we have ten days to discuss your letter. Ten days from December 29, 2021 is January 8, 2022, which gets bumped forward to January 10, 2022 per F.R.C.P. 6(a)(1)(C). We also have ten days to discuss this letter from me since I propose cross-motion practice if you insist on pressing forward. L.R. 37-1. Because my letter raises a lot of issues that yours does not address, I suggest that we discuss both letters on January 10, 2022. Since we are not in the same county, and given the current COVID situation, I think we should discuss over the phone. Please let me know some windows of time that work for you on January 10, 2022.

Very truly yours,

Jean-Paul Jassy
JASSY VICK CAROLAN LLP